1  E. MARTIN ESTRADA
   United States Attorney
2  MACK E. JENKINS
   Assistant United States Attorney
3  Chief, Criminal Division
   JEFF MITCHELL (Cal. Bar No. 236225)
4  Assistant United States Attorney
   Major Frauds Section
5  RACHEL N. AGRESS (Cal. Bar No. 281703)
   Assistant United States Attorney
6  International Narcotics, Money Laundering
    and Racketeering Section
7  DANIEL G. BOYLE (Cal. Bar No. 332518)
   Assistant United States Attorney
8  Environmental Crimes and
    Consumer Protection Section
9       1100/1400 United States Courthouse
        312 North Spring Street
10      Los Angeles, California 90012
        Telephone: (213) 894-0698/0487/2426
11      Facsimile: (213) 894-6269
        E-mail:    jeff.mitchell@usdoj.gov
12                 rachel.agress@usdoj.gov
                   daniel.boyle2@usdoj.gov
13

14 Attorneys for Plaintiff
   UNITED STATES OF AMERICA
15
                   UNITED STATES DISTRICT COURT
16
                 FOR THE CENTRAL DISTRICT OF CALIFORNIA
17
   UNITED STATES OF AMERICA,          No. CR 2:23-cr-00656-FLA
18
            Plaintiff,                PLEA AGREEMENT FOR DEFENDANT
19                                    SCOTT SIBELLA
                 v.
20
   SCOTT SIBELLA,
21
            Defendant.
22

23

24      1.   This constitutes the plea agreement between SCOTT SIBELLA

25 ("defendant") and the United States Attorney's Office for the Central

26 District of California (the "USAO") in the investigation of

27 defendant's conduct described in the agreed-to factual basis set

28 forth in Attachment A below.  This agreement is limited to the USAO

FILED
CLERK, U.S. DISTRICT COURT
12/27/2023
CENTRAL DISTRICT OF CALIFORNIA
BY:  GR  DEPUTY

LODGED
CLERK, U.S. DISTRICT COURT
12/27/2023
CENTRAL DISTRICT OF CALIFORNIA
BY:  CDO  DEPUTY

and cannot bind any other federal, state, local, or foreign

prosecuting, enforcement, administrative, or regulatory authorities.

<u>DEFENDANT'S OBLIGATIONS</u>

2.   Defendant agrees to:

a.   Give up the right to indictment by a grand jury and, at the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to a single-count information in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with failure to file reports of suspicious transactions required to be made by casinos, relevant to possible violations of law and regulation, and causing the commission of the same, in violation of 31 U.S.C. § 5318, 5322(a), 31 C.F.R. § 1021.320 and 18 U.S.C. § 2(b).

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.   Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

h.   Recommend that defendant receive, as part of his sentence, a fine in an amount no less than the high end of the applicable Sentencing Guidelines range and not argue, or suggest in any way, either orally or in writing, that a lower fine amount be imposed.  For purposes of this agreement, the high end of the Sentencing Guidelines range is that defined by the Sentencing Table in U.S.S.G. Chapter 5, Part E.

<u>THE USAO'S OBLIGATIONS</u>

3.   The USAO agrees to:

a.   Not contest facts agreed to in this agreement.

b.   Abide by all agreements regarding sentencing contained in this agreement.

c.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

d.   Except for criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371), not further criminally prosecute defendant for violations of 18 U.S.C. §§ 1956, 1957; and 31 U.S.C. § 5318, 5322(a) arising out of defendant's conduct described in the agreed-to factual basis set forth in Attachment A below for the time periods of 2017 through September 15, 2023.  Defendant understands that the USAO is free to criminally prosecute defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement. Defendant agrees that at the time of sentencing the Court may

consider the uncharged conduct in determining the applicable
Sentencing Guidelines range, the propriety and extent of any
departure from that range, and the sentence to be imposed after
consideration of the Sentencing Guidelines and all other relevant
factors under 18 U.S.C. § 3553(a).

<u>NATURE OF THE OFFENSE</u>

4.    Defendant understands that for defendant to be guilty of
the crime charged in the single-count Information, that is, failure
to file and causing a casino to fail to file reports of suspicious
transactions required to be made by casinos, in violation of Title
31, United States Code, Sections 5318(g) and 5322(a), and regulations
issued thereunder, to wit: Title 31, Code of Federal Regulations,
Section 1021.320, the following must be true:

a.    The defendant was a director, officer, employee, or
agent of a financial institution, within the meaning of the Bank
Secrecy Act, Title 31, United States Code, Section 5312(a)(2)(x);

b.    The defendant knew that defendant and his financial
institution were required to file reports with the Financial Crimes
Enforcement Network ("FinCEN"), a bureau of the Department of the
Treasury, of suspicious transactions relevant to possible violations
of law or regulation;

c.    The defendant had knowledge of a suspicious
transaction relevant to possible violations of law or regulation
conducted at the financial institution at which he worked; and

d.    The defendant willfully failed to file a report of the
suspicious transaction with FinCEN or caused his financial
institution to fail to file a report of the suspicious transaction.

1

PENALTIES

2       5.   Defendant understands that the statutory maximum sentence

3  that the Court can impose for a violation of Title 31, United States

4  Code, Sections 5318(g) and 5322(a), is: five years' imprisonment; a

5  three-year period of supervised release; a five-year period of

6  probation; a fine of $250,000 or twice the gross gain or gross loss

7  resulting from the offense, whichever is greatest; and a mandatory

8  special assessment of $100.

9       6.   Defendant understands that supervised release is a period

10  of time following imprisonment during which defendant will be subject

11  to various restrictions and requirements.  Defendant understands that

12  if defendant violates one or more of the conditions of any supervised

13  release imposed, defendant may be returned to prison for all or part

14  of the term of supervised release authorized by statute for the

15  offense that resulted in the term of supervised release, which could

16  result in defendant serving a total term of imprisonment greater than

17  the statutory maximum stated above.

18       7.   Defendant understands that, by pleading guilty, defendant

19  may be giving up valuable government benefits and valuable civic

20  rights, such as the right to vote, the right to possess a firearm,

21  the right to hold office, and the right to serve on a jury. Defendant

22  understands that he is pleading guilty to a felony and that it is a

23  federal crime for a convicted felon to possess a firearm or

24  ammunition.  Defendant understands that the conviction in this case

25  may also subject defendant to various other collateral consequences,

26  including but not limited to revocation of probation, parole, or

27  supervised release in another case and suspension or revocation of a

28  professional license.  Defendant understands that unanticipated

collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

8. Defendant understands that, if defendant is not a United States citizen, the felony conviction in this case may subject defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future. The Court cannot, and defendant's attorney also may not be able to, advise defendant fully regarding the immigration consequences of the felony conviction in this case. Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty plea.

FACTUAL BASIS

9. Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty. Defendant and the USAO agree to the statement of facts provided for in Attachment A, attached hereto, and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 11 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

SENTENCING FACTORS

10. Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a). Defendant understands that the

Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

11.  Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 8 | U.S.S.G. § 2S1.3(a)(1) |
| Specific Offense Characteristics: | | |
| Proceeds of unlawful activity | +2 | U.S.S.G. § 2S1.3 (b) (1) |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

12.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

13.  Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

14.  Defendant understands that by pleading guilty, defendant gives up the following rights:

       a.    The right to persist in a plea of not guilty.

       b.    The right to a speedy and public trial by jury.

c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.   The right to confront and cross-examine witnesses against defendant.

f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF VENUE</u>

15.  Having been fully advised by defendant's attorney regarding the requirements of venue with respect to the offense to which defendant is pleading guilty, to the extent the offense to which defendant is pleading guilty were committed, begun, or completed outside the Central District of California, defendant knowingly, voluntarily, and intelligently waives, relinquishes, and gives up: (a) any right that defendant might have to be prosecuted only in the district where the offense to which defendant is pleading guilty were

committed, begun, or completed; and (b) any defense, claim, or argument defendant could raise or assert based upon lack of venue with respect to the offense to which defendant is pleading guilty.

## WAIVER OF STATUTE OF LIMITATIONS

16.  Having been fully advised by defendant's attorney regarding application of the statute of limitations to the offense to which defendant is pleading guilty, defendant hereby knowingly, voluntarily, and intelligently waives, relinquishes, and gives up: (a) any right that defendant might have not to be prosecuted for the offense to which defendant is pleading guilty  because of the expiration of the statute of limitations for that offense prior to the filing of the information alleging that offense; and (b) any defense, claim, or argument defendant could raise or assert that prosecution of the offense to which defendant is pleading guilty is barred by the expiration of the applicable statute of limitations, pre-indictment delay, or any speedy trial violation.

## WAIVER OF APPEAL OF CONVICTION

17.  Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

1    LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE AND COLLATERAL ATTACK

2        18.   Defendant agrees that, provided the Court imposes a term of

3    imprisonment within or below the range corresponding to an offense

4    level of 8 and the criminal history category calculated by the Court,

5    defendant gives up the right to appeal all of the following: (a) the

6    procedures and calculations used to determine and impose any portion

7    of the sentence; (b) the term of imprisonment imposed by the Court;

8    (c) the fine imposed by the Court, provided it is within the

9    statutory maximum; (d) to the extent permitted by law, the

10   constitutionality or legality of defendant's sentence, provided it is

11   within the statutory maximum; (e) the term of probation or supervised

12   release imposed by the Court, provided it is within the statutory

13   maximum; and (f) any of the following conditions of probation or

14   supervised release imposed by the Court: the conditions set forth in

15   Second Amended General Order 20-04 of this Court; the drug testing

16   conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the

17   alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

18       19.   The USAO agrees that, provided (a) all portions of the

19   sentence are at or below the statutory maximum specified above and

20   (b) the Court imposes a term of imprisonment within or above the

21   range corresponding to an offense level of 8 and the criminal history

22   category calculated by the Court, the USAO gives up its right to

23   appeal any portion of the sentence.

24       20.   Defendant also gives up any right to bring a post-

25   conviction collateral attack on the conviction or sentence, except a

26   post-conviction collateral attack based on a claim of ineffective

27   assistance of counsel, a claim of newly discovered evidence, or an

28   explicitly retroactive change in the applicable Sentencing

Guidelines, sentencing statutes, or statutes of conviction. Defendant understands that this waiver includes, but is not limited to, arguments that the statutes and regulations to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

21.  Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

<u>RESULT OF VACATUR, REVERSAL OR SET-ASIDE</u>

22.  Defendant agrees that if the count of conviction is vacated, reversed, or set aside, both the USAO and defendant will be released from all their obligations under this agreement.

1

## EFFECTIVE DATE OF AGREEMENT

2    23.   This agreement is effective upon signature and execution of

3 all required certifications by defendant, defendant's counsel, and an

4 Assistant United States Attorney.

5

## BREACH OF AGREEMENT

6    24.   Defendant agrees that if defendant, at any time after the

7 effective date of his agreement, knowingly violates or fails to

8 perform any of defendant's obligations under this agreement ("a

9 breach"), the USAO may declare this agreement breached.  All of

10 defendant's obligations are material, a single breach of this

11 agreement is sufficient for the USAO to declare a breach, and

12 defendant shall not be deemed to have cured a breach without the

13 express agreement of the USAO in writing.  If the USAO declares this

14 agreement breached, and the Court finds such a breach to have

15 occurred, then: (a) if defendant has previously entered a guilty plea

16 pursuant to this agreement, defendant will not be able to withdraw

17 the guilty plea, and (b) the USAO will be relieved of all its

18 obligations under this agreement.

19    25.   Following the Court's finding of a knowing breach of this

20 agreement by defendant, should the USAO choose to pursue any charge

21 or any civil, administrative, or regulatory action that was either

22 dismissed or not filed as a result of this agreement, then:

23         a.   Defendant agrees that any applicable statute of

24 limitations is tolled between the date of defendant's signing of this

25 agreement and the filing commencing any such action.

26         b.   Defendant waives and gives up all defenses based on

27 the statute of limitations, any claim of pre-indictment delay, or any

28 speedy trial claim with respect to any such action, except to the

1    extent that such defenses existed as of the date of defendant's

2    signing this agreement.

3          c.    Defendant agrees that: (i) any statements made by

4    defendant, under oath, at the guilty plea hearing (if such a hearing

5    occurred prior to the breach); (ii) the agreed to factual basis

6    statement in this agreement; and (iii) any evidence derived from such

7    statements, shall be admissible against defendant in any such action

8    against defendant, and defendant waives and gives up any claim under

9    the United States Constitution, any statute, Rule 410 of the Federal

10   Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal

11   Procedure, or any other federal rule, that the statements or any

12   evidence derived from the statements should be suppressed or are

13   inadmissible.

14                COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

15                               OFFICE NOT PARTIES

16         26.   Defendant understands that the Court and the United States

17   Probation and Pretrial Services Office are not parties to this

18   agreement and need not accept any of the USAO's sentencing

19   recommendations or the parties' agreements to facts or sentencing

20   factors.

21         27.   Defendant understands that both defendant and the USAO are

22   free to: (a) supplement the facts by supplying relevant information

23   to the United States Probation and Pretrial Services Office and the

24   Court, (b) correct any and all factual misstatements relating to the

25   Court's Sentencing Guidelines calculations and determination of

26   sentence, and (c) argue on appeal and collateral review that the

27   Court's Sentencing Guidelines calculations and the sentence it

28   chooses to impose are not error, although each party agrees to

maintain its view that the calculations in paragraph 11 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

28.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

29.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

//

//

//

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

30.   The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

E. MARTIN ESTRADA
United States Attorney

*/s/ Jeff Mitchell*                                    12/26/2023
_____        _____
JEFF MITCHELL                                          Date
RACHEL N. AGRESS
DANIEL G. BOYLE
Assistant United States Attorneys


_____        _____
SCOTT SIBELLA                                          Date   12/18/23
Defendant


_____        _____
JEFFREY H. RUTHERFORD                                  Date   12/18/2023
Kendall Brill & Kelly LLP

JOHN V. SPILOTRO
The Law Office Of
John V. Spilotro, Esq.

Attorneys for Defendant
SCOTT SIBELLA


CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms.  I have discussed the evidence with my attorney, and my attorney has

15

advised me of my rights, of possible pretrial motions that might be
filed, of possible defenses that might be asserted either prior to or
at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),
of relevant Sentencing Guidelines provisions, and of the consequences
of entering into this agreement.  No promises, inducements, or
representations of any kind have been made to me other than those
contained in this agreement.  No one has threatened or forced me in
any way to enter into this agreement.  I am satisfied with the
representation of my attorney in this matter, and I am pleading
guilty because I am guilty of the charge and wish to take advantage
of the promises set forth in this agreement, and not for any other
reason.

_____          12/18/23
SCOTT SIBELLA                              Date
Defendant


### CERTIFICATION OF DEFENDANT'S ATTORNEY

I am SCOTT SIBELLA's attorney.  I have carefully and thoroughly
discussed every part of this agreement with my client.  Further, I
have fully advised my client of his rights, of possible pretrial
motions that might be filed, of possible defenses that might be
asserted either prior to or at trial, of the sentencing factors set
forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines
provisions, and of the consequences of entering into this agreement.
To my knowledge: no promises, inducements, or representations of any
kind have been made to my client other than those contained in this
agreement; no one has threatened or forced my client in any way to
enter into this agreement; my client's decision to enter into this

16

1  agreement is an informed and voluntary one; and the factual basis set

2  forth in this agreement is sufficient to support my client's entry of

3  a guilty plea pursuant to this agreement.

4

                                                 12 | 18 / 2023

5  JEFFREY H. RUTHERFORD                       Date
   Kendall Brill & Kelly LLP

6
   JOHN V. SPILOTRO
7  The Law Office Of
   John V. Spilotro, Esq.

8
   Attorneys for Defendant
9  SCOTT SIBELLA

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17

**Attachment A**

**Statement of Facts**

The following Statement of Facts is incorporated by reference as part of the Agreement dated December 7, 2023, between the USAO and defendant SCOTT SIBELLA.  The USAO and defendant SCOTT SIBELLA agree that the following facts are true and correct.

At times relevant to this Agreement:

I.  <u>Background – Scott Sibella</u>

1.  MGM Grand, Las Vegas ("MGM Grand") was a limited liability corporation headquartered in and organized under the laws of the State of Nevada and operated as a Nevada casino licensed and regulated by the Nevada Gaming Control Board, in Las Vegas, Nevada.  The Mirage, Aria, and Bellagio were among a number of hotels and casinos affiliated with MGM Grand that were located in Las Vegas, Nevada.

2.  Defendant SIBELLA was employed as the President of MGM Grand until February 2019.

3.  At MGM Grand, the Mirage, Aria, and the Bellagio, money was exchanged for chips at the casino cages or at the gaming tables.  Casino chips were small discs used as currency in casinos for gaming purposes.  To obtain casino chips, customers could present the casino money in the form of cash, cashiers' checks, and wire transfers.  In addition, the casinos provided chips to some customers based on credit, i.e., a "marker."  When a customer wished to obtain chips on credit, the casino's credit department would run a background

A-1

check on the customer, which would include obtaining credit
reports, calling banks and obtaining banking information,
conducting public record searches, contacting marketing hosts,
asking customers to self-identify their occupation and/or
business position, and contacting unaffiliated casinos to
determine the credit worthiness of the customer.  Money owed
on markers could be paid in the form of cash, money orders,
cashier's checks, wire transfers, personal checks, or business
checks.

     II.   The Bank Secrecy Act and MGM Grand's Anti-Money
            Laundering Compliance Program

    4.   The Bank Secrecy Act ("BSA"), codified at Title 31,
United States Code §§ 5313-5326, as implemented through related
federal regulations, was enacted by Congress to address criminal
money laundering activities utilizing financial institutions.

    5.   Title 31, United States Code, Section 5318(g), and
related regulations, required financial institutions, including
casinos, to file with the Department of the Treasury a
"Suspicious Activity Report" ("SAR") for any transaction
conducted through the casino that involved at least $5,000 in
funds, and the casino knew, suspected, or had reason to suspect
that the transaction (or a pattern of transactions of which the
transaction was a part): (i) involved funds derived from illegal
activity or was intended or conducted in order to hide or
disguise funds or assets derived from illegal activity as part
of a plan to violate or evade any federal law or regulation or
to avoid any transaction reporting requirement under federal law

or regulation; (ii) was designed, whether through structuring or other means, to evade any regulations promulgated under the BSA; (iii) had no business or apparent lawful purpose or was not the sort in which the particular customer would normally be expected to engage, and the casino knew of no reasonable explanation for the transaction after examining the available facts, including the background and possible purpose of the transaction; or (iv) involved use of the casino to facilitate criminal activity.

6.    SARs were to be filed with the Financial Crimes Enforcement Network ("FinCEN"), a bureau of the Department of the Treasury.

7.    As a licensed gaming establishment with an annual gaming revenue of more than $1,000,000, MGM Grand was a "financial institution" within the meaning of the BSA, Title 31, United States Code, Section 5312(a)(2)(x), and required to file SARs with FinCEN.  MGM Grand's parent company maintained an anti-money laundering compliance program ("AML Compliance Program") and compliance team that covered MGM Grand and affiliated U.S. properties, including The Mirage, Aria and the Bellagio, and was responsible for developing written policies, training, and monitoring of the generation and reporting of SARs.

III.  Wayne Nix

8.    Wayne Nix was a resident of Orange County, California.  From sometime before August 2017 until sometime after February 2019, Nix operated an illegal bookmaking business within the Central District of California and elsewhere that accepted and paid off bets from bettors in

A-3

California and elsewhere in the United States on the outcomes of sporting events at agreed-upon odds (the "Nix Gambling Business").

IV.  SIBELLA Allowed Nix to Continue to Gamble at the MGM Grand and Its Affiliated Casinos

9.   Nix was assigned two marketing hosts, Host A and Host B.  The hosts were Nix's primary points of contact at the casino and other affiliated properties.

10.  From an unknown date, but no later than approximately August 2017 through February 2019, defendant SIBELLA was aware that Nix engaged in illegal bookmaking by taking bets on sporting events and continued to allow Nix to gamble at MGM Grand and/or other affiliate properties.  Not only did defendant SIBELLA and the two hosts continue to allow Nix to gamble at the casino and/or at other affiliate properties, but they would authorize Nix to receive complimentary benefits at the casino, including meals, room, board, and golf trips with senior executives and other high net-worth customers of the casinos to further encourage Nix to patronize the casino and/or other affiliated properties.

11.  Defendant SIBELLA suspected that certain customers of MGM Grand and/or of affiliated properties placed large bets with the Nix Gambling Business.  For example:

a.   On or about November 15, 2018, via telephone, Nix told one his agents ("Agent 1") that Nix was unhappy with certain clients of the Nix Gambling Business.  On that call, defendant SIBELLA reminded Nix that he had told Nix to stay

away from one of those clients.  During that same call, Nix told defendant SIBELLA that Nix was going to "square up with MGM," and that MGM Grand and its affiliates were "up a Bentley" on Nix.  Defendant SIBELLA knew that Nix was gambling at MGM Grand and its affiliates, and transacting in amounts over $5,000.  On that same call Nix also informed defendant SIBELLA that another significant client of both the Nix Gambling Business and MGM Grand was unhappy with MGM Grand's accommodations, and defendant SIBELLA asked Nix to "find out what happened" and to see if it was "over discounts," so defendant SIBELLA could "look into it."

        b.   On or about January 29, 2019, via telephone, Nix told defendant SIBELLA that an individual known to defendant SIBELLA had placed a $5 million bet on the Super Bowl with Nix.

    12.  From approximately May 2018 until his departure in February 2019, defendant SIBELLA approved qualified complimentary rooms, food service, and event tickets for Nix at the MGM Grand and recommended that Nix be invited on marketing trips for the purpose of encouraging Nix to gamble at MGM Grand and its affiliates, some of which were referred to as "Undercover Weekends" due to defendant SIBELLA's prior appearance on a reality television show called Undercover Boss. For example:

### August 2017: Scott Sibella Undercover Weekend Event

        a.   Between on or about August 23, 2017, and August 25, 2017, Nix attended a Scott Sibella Undercover Weekend

event, which was organized by casino marketing and hosted by
defendant SIBELLA.

     b.     Between on or about August 23, 2017, and August
28, 2017, Nix gambled at The Mirage and MGM Grand.

### May 2018: Nix's Hotel Room Reserved by Defendant SIBELLA

     c.     On or about May 16, 2018, defendant
SIBELLA's complimentary benefits authorization was used to
reserve a VIP hotel suite for Nix at MGM Grand for a stay
beginning on May 20, 2018.

     d.     Between on or about May 20, 2018, and May
23, 2018, Nix gambled at MGM Grand.

### June 2018: Scott Sibella Undercover Weekend Event

     e.     On or about April 18, 2018, via e-mail,
defendant SIBELLA recommended that Nix be invited to attend a
Scott Sibella Undercover Weekend event, which was scheduled
for June 27 through June 29, 2018.

     f.     Between on or about June 27 and June 29, 2018,
Nix attended a Scott Sibella Undercover Weekend event, which
was organized by casino marketing and hosted by defendant
SIBELLA.

     g.     Between on or about June 27, 2018, and June 30,
2018, Nix gambled at The Mirage and Aria.

### July 2018: Nix's Gambling Trip with Defendant SIBELLA's Complimentary Items

     h.     Between on or about July 27, 2018, and July 30,
2018, defendant SIBELLA approved complimentary food,
beverages, hotel rooms at MGM Grand and spa services for Nix.

i.   Between on or about July 27, 2018, and July 30, 2018, Nix gambled at MGM Grand and Aria.

j.   On or about July 27, 2018, Nix made a cash payment of $120,000 to MGM Grand to pay a marker he owed to the casino.  Defendant SIBELLA deliberately avoided learning how Nix paid his marker, namely, that Nix made a cash payment of over $5,000 to MGM Grand on or around July 27, 2018, in order to continue to gamble at the casino.

k.   On August 1, 2018, via email, defendant SIBELLA received a summary of Nix's play and complimentary items.

**August 2018: Nix's Gambling Trip to Las Vegas**

l.   Between on or about August 26, 2018, and August 29, 2018, Nix gambled at MGM Grand, The Mirage, and Aria.

m.   On or about August 27, 2018, defendant SIBELLA approved a complimentary limousine for Nix.

**November 2018: Scott Sibella Undercover Weekend Event**

n.   Between on or about November 27 and November 29, 2017, Nix attended a Scott Sibella Undercover Weekend event in Palm Springs, California, which was organized by casino marketing and hosted by defendant SIBELLA.

V.   Defendant SIBELLA's Failure to Report Nix's Suspicious Activity to MGM Grand's Compliance Personnel Caused MGM Grand to Fail to File a SAR Regarding Nix's Source of Funds

13.  Under the AML Compliance Program, MGM Grand's employees on the business and marketing side were responsible for affirmatively reaching out to the compliance team in the

event they observed suspicious activity.  Specifically, MGM
Grand's parent company's AML Compliance Policy during the 2017
to 2019 period required that when an officer, employee, or
agent of MGM Grand determined that a possible suspicious
transaction had occurred, that individual was to complete
either "a Suspicious Activity Incident Report, or a Suspicious
Activity Report."

14.  Defendant SIBELLA received trainings on the AML
Compliance Policy in at least 2010 and 2014.  Defendant SIBELLA
knew of the reporting requirements and the duty of someone in
his position to report suspicious activity.  Also, when he was
interviewed by law enforcement on January 10, 2022, defendant
SIBELLA admitted that he believed Nix was involved in illegal
sports bookmaking.  Specifically, defendant SIBELLA admitted
that he had "heard that Nix was in the booking business" and he
"couldn't figure out how he had all the money he gambled with."
Defendant SIBELLA further admitted "I didn't want to know
because of my position, . . . in this business, they [bookies]
are a dime a dozen. . . I stay out of it.  If we know, we can't
allow them to gamble. . . I didn't ask, I didn't want to know I
guess because he wasn't doing anything to cheat the casino."

15.  Despite being trained and having knowledge of his duty
to do so, between approximately August 2017 and February 2019,
defendant SIBELLA failed to report to MGM compliance personnel
that Nix was an illegal sports bookmaker.

16.  Because of defendant SIBELLA's failure to report any
suspicious activity by Nix to MGM Grand's parent's AML

compliance personnel, MGM Grand failed to file at least one SAR
regarding Nix's Source of Funds and his illegal sports
bookmaking in relation to Nix's cash payments to MGM Grand,
including a cash payment of over $5,000 on or about July 27,
2018.

EXHIBIT A

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE CENTRAL DISTRICT OF CALIFORNIA

10   UNITED STATES OF AMERICA,          CR No.

11          Plaintiff,                  I N F O R M A T I O N

12          v.                          [31 U.S.C. § 5318, 5322(a), 31
                                        C.F.R. § 1021.320 for: Failure
13   SCOTT SIBELLA,                     to File Report of Suspicious
                                        Transaction Required to be Made
14          Defendant.                  by Casinos]

15

16        The United States Attorney charges:

17          [31 U.S.C. §§ 5318(g), 5322(a); 31 C.F.R. § 1021.320;

18                        18 U.S.C. § 2(b)]

19        On or about July 27, 2018, within the Central District of

20   California, and elsewhere, the defendant SCOTT SIBELLA, together with

21   others, did willfully fail to file, and willfully caused MGM Grand

22   Las Vegas ("MGM Grand") to fail to file, with the United States

23   Department of the Treasury, a report of a suspicious transaction

24   relevant to possible violations of law and regulation, contrary to

25   Title 31, United States Code, Sections 5318(g), 5322(a), and

26   //

27

28

1  regulations issued thereunder, to wit, Title 31, Code of Federal

2  Regulations, Section 1021.320, namely, the presentation of $120,000

3  in cash by Wayne Nix to MGM Grand.

4

5                                    E. MARTIN ESTRADA
                                     United States Attorney
6

7

8                                    MACK E. JENKINS
                                     Assistant United States Attorney
9                                    Chief, Criminal Division

10                                   RANEE A. KATZENSTEIN
                                     Assistant United States Attorney
11                                   Chief, Major Frauds Section

12                                   SCOTT PAETTY
                                     Assistant United States Attorney
13                                   Deputy Chief, Major Frauds Section

14                                   JEFF MITCHELL
                                     Assistant United States Attorney
15                                   Major Frauds Section

16                                   RACHEL N. AGRESS
                                     Assistant United States Attorney
17                                   International Narcotics, Money
                                     Laundering
18                                    and Racketeering Section
                                     Bank Secrecy Act Coordinator
19
                                     DAN G. BOYLE
20                                   Assistant United States Attorney
                                     Environmental Crimes and
21                                    Consumer Protection Section

22

23

24

25

26

27

28

                                     2