KENDALL BRILL & KELLY LLP
Jeffrey H. Rutherford (181695)
 jrutherford@kbkfirm.com
Michael J. McCarthy (334829)
 mmccarthy@kbkfirm.com
10100 Santa Monica Blvd., Suite 1725
Los Angeles, California 90067
Telephone: 310.556.2700
Facsimile:  310.556.2705

THE LAW OFFICE OF JOHN V. SPILOTRO, P.C.
John V. Spilotro (*Admitted Pro Hac Vice*)
 lawyer@lasvegas.net
319 South Third Street, Suite 100
Las Vegas, Nevada  89101
Telephone:  702.385.4994
Facsimile:   702.342.5479

MICHAEL H. ARTAN, LAWYER, APC
Michael H. Artan
 michaelartan@yahoo.com
35 North Lake Avenue, Suite 710
Pasadena, California  91101
Telephone:  (213) 407-2985
Facsimile:  (213) 402-3132

Attorneys for Defendant
Scott Sibella

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> SCOTT SIBELLA, <br><br> Defendant. | Case No. CR 23-656-DMG <br><br> **DEFENDANT SCOTT SIBELLA'S SENTENCING MEMORANDUM** <br><br> Judge:      Hon. Dolly M. Gee <br> Date:         May 8, 2024 <br> Time:        3:00 p.m. <br> Courtroom: 8C |

604405203

Case No. CR 23-656-DMG
DEFENDANT SCOTT SIBELLA'S SENTENCING MEMORANDUM

Defendant Scott Sibella, by and through his counsel record, hereby respectfully submits his position regarding sentencing.

DATED: April 24, 2024          KENDALL BRILL & KELLY LLP


By:   /s/
          Jeffrey H. Rutherford
          Attorneys for Defendant Scott Sibella

Kendall Brill & Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

604405203

Case No. CR 23-656-DMG
DEFENDANT SCOTT SIBELLA'S SENTENCING MEMORANDUM

## TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................2

II. PROCEDURAL BACKGROUND .......................................................................2

    A. Plea Agreement. ........................................................................................2

    B. The PSR and the USPO's Recommendation Letter. ................................3

    C. Modifications to Conditions of Probation. ...............................................3

        1. Financial Conditions ......................................................................4

        2. Standard Travel Condition ............................................................4

        3. Standard Employment Condition ..................................................5

III. PERSONAL BACKGROUND ............................................................................5

    A. Personal History and Characteristics .......................................................5

    B. Employment History ................................................................................6

    C. Mr. Sibella's Good Deeds and Service to Others ....................................8

IV. LEGAL STANDARDS .....................................................................................10

V. SENTENCING FACTORS ................................................................................10

    A. Nature and Circumstances of the Offense .............................................10

    B. History and Characteristics of Mr. Sibella .............................................11

        1. Mr. Sibella's Conduct is a Marked Deviation from an Otherwise Law-Abiding Life ........................................................11

        2. Mr. Sibella's Employment Record ..............................................11

        3. Mr. Sibella's Acceptance of Responsibility ................................11

        4. The Collateral Consequences to Mr. Sibella and his Family .........................................................................................12

        5. History of Good Works and Community Service .......................12

    C. A Probationary Sentence of No More Than One Year is Just Punishment and Meets the Purposes of Sentencing ................................13

VI. CONCLUSION ..................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*United States v. Brown*,
  985 F.2d 478 (9th Cir. 1993) ............................................................................... 11

*Kimbrough v. United States*,
  552 U.S. 85 (2007) ............................................................................................... 10

*United States v. Nesbeth*,
  188 F.Supp.3d 179 (E.D.N.Y. 2016) .................................................................... 12

**Statutes**

18 U.S.C. § 3553 ............................................................................... 2, 10, 11, 12

18 U.S.C. § 3563 ............................................................................................. 4

31 U.S.C. § 5318 ............................................................................................. 2

31 U.S.C. § 5322 ............................................................................................. 2

U.S.S.G. § 3E1.1 ......................................................................................... 3, 12

**Regulations**

31 C.F.R. § 1021.320 ...................................................................................... 2

604405203

Case No. CR 23-656-DMG

DEFENDANT SCOTT SIBELLA'S SENTENCING MEMORANDUM

Kendall Brill & Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

# DEFENDANT SCOTT SIBELLA'S SENTENCING MEMORANDUM

*Scott has been an exemplary employee his entire career. This one mistake should not define an incredible man and his extraordinary career. It should not erase thirty years of his hard work and immense dedication to serving Las Vegas. He is hurting and is fully aware of the enormity of his mistake. Every day Scott will miss being a part of making Las Vegas the greatest destination for travelers from all over the world.*

-- Letter of Nick Bogdanovich at E-3.[1]

*[Scott] has taken full responsibility for his actions and he is not blaming anyone else. This plea does not diminish his lifetime of work in this most competitive world of the casino business. He rose from humble beginnings on Pebble Beach Boulevard in Las Vegas to becoming the most creative and innovative president of the largest hotel and casino on the Las Vegas strip. He will continue to be a positive influence on his many friends, family and colleagues.*

-- Letter of Charles Walsh at E-27.

*As a Hotel/Gaming President, Mr. Sibella is widely respected for his dedication to improving his surroundings and positively influencing those around him. It is also known that regardless of the demands of his position, he would find time to mentor and support his team members. His actions reflect qualities of compassion, empathy, and genuine concern for their well-*

---

[1] In connection with this sentencing memorandum, the defense is filing dozens of letters of support. As the Court will read, the letters of support come from all aspects of Mr. Sibella's life – friends (old and new), family, professional colleagues, community leaders, and other people whose lives Mr. Sibella has touched. *See* Letters of Support (filed separately). The defense has redacted certain personal contact and identifying information from the letters.

> *being. It's not common to encounter individuals like Mr. Sibella in this industry, and being in his position, I've always held great respect for him, not only as a Hotel/Gaming President but also as a person. The conduct presented in Mr. Sibella's case do not define his character and fail to reflect how he upholds himself in every aspect of his life.*
>
> -- Letter of Jeff Manthey at E-14.

## I. INTRODUCTION

Scott Sibella comes before the Court for sentencing, having pleaded guilty to a single count of failing to file a suspicious activity report ("SAR"), in violation of 31 U.S.C. §§ 5318, 5322(a), and 31 C.F.R. § 1021.320. For the reasons that follow and consistent with the recommendation of the United States Probation Office ("USPO"), the defense respectfully requests that the Court impose the following sentence:

A one-year term of probation;

A fine of $9,500; and,

A Special Assessment of $100.

Mr. Sibella regrets what he did, is deeply remorseful, and takes full responsibility for his misconduct. A year of probation and a $9,500 fine is consistent with his Plea Agreement and justified by the nature and circumstances of the offense, his personal history and characteristics, the many letters of support that have been filed in connection with the sentencing memorandum, the applicable Guidelines, and the factors set forth in 18 U.S.C. § 3553(a).

## II. PROCEDURAL BACKGROUND

### A. Plea Agreement.

Mr. Sibella entered into a pre-indictment disposition with the government, namely a Plea Agreement, a stipulated Statement of Facts, a waiver of indictment, a waiver of venue, and a plea to an Information. In the Plea Agreement, the parties

Kendall Brill & Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

604405203

2

Case No. CR 23-656-DMG

DEFENDANT SCOTT SIBELLA'S SENTENCING MEMORANDUM

stipulate to the application of the Guidelines as follows:

  Base Offense Level = 8 (§2S1.3(a)(1))

  Proceeds of Unlawful Activity = +2 (§2S1.3(b)(1))[2]

  Acceptance of Responsibility = -2 (§3E1.1)

  Total Offense Level = 8[3]

See Plea Agreement at ¶¶ 3(c), 11.

  In the Plea Agreement, Mr. Sibella also agrees to a fine at the high end of the applicable Guidelines range. See Plea Agreement ¶ 2(h).

### B. The PSR and the USPO's Recommendation Letter.

On April 3, 2024, the USPO filed the PSR and its Recommendation Letter. The PSR finds a Total Offense Level of 6 (0-6 months) after the application of the Zero-Point Offender reduction.

The USPO recommends a one-year term of probation, a fine of $9,500,[4] and a Special Assessment of $100.[5]

### C. Modifications to Conditions of Probation.

The defense has no objections to the PSR.

---

[2] This enhancement is based on Mr. Sibella deliberately avoiding learning how Wayne Nix paid his gambling debt, namely a cash payment by Mr. Nix, in excess of $5000, that was made to MGM Grand on or about July 27, 2018. See Factual Basis at ¶¶ 12(j), 16.

[3] Mr. Sibella also qualifies for the Zero-Point Offender reduction, pursuant to §4C1.1, which the USPO applies. However, at the time the parties entered into the Plea Agreement, the government had not formulated a way to include the reduction its standard plea agreement, as the reduction only came into effect the month prior to the parties signing the Plea Agreement (i.e., November 1, 2023).

[4] A fine of $9,500 is at the high-end of Offense Level 6, pursuant to §5E1.2(c)(4), and thus consistent with the Plea Agreement.

[5] Given that Mr. Sibella is in Zone A and given that he qualifies as a Zero-Point Offender, probation is "generally appropriate." See §5C1.2, App. Note 10(A).

In its Recommendation Letter, the USPO recommends conditions for Mr. Sibella's probation. Should the Court impose probation, the defense respectfully requests that the Court modify some of the conditions the USPO has recommended.

### 1. Financial Conditions

In Condition 1, the Recommendation Letter recommends that Mr. Sibella comply with Second Amended General Order 20-04 ("SAGO 20-24"), including Section III – Conditions of Probation and Supervised Release Pertaining to Financial Sanctions.

In Condition 4, the Recommendation Letter recommends that Mr. Sibella apply all monies received from certain sources to satisfy his financial obligations.

Finally, in Condition 5, the Recommendation Letter recommends that Mr. Sibella provide the USPO with authorizations, tax returns, and a financial statement with supporting documentation.

Assuming that a fine is ordered by the Court and is in line with the USPO's recommendation, Mr. Sibella intends to make payment within 15 days of sentencing. As such, the defense requests that the Court modify Mr. Sibella's conditions of probation to provide that he will be relieved of the financial reporting and disclosure conditions set forth in Condition 1 (SAGO 20-04, Section III) and Conditions 4-5, upon full payment of any fine and the Special Assessment.

Requiring Mr. Sibella to continue to abide by the requirements of Conditions 1 and 5, in particular, after payment of his fine and Special Assessment, would not meet the factors set forth in §5B1.3(b) and 18 U.S.C. § 3563(b), which govern the application of discretionary conditions of probation.

### 2. Standard Travel Condition

The Recommendation Letter recommends that Mr. Sibella comply with SAGO 20-04, generally. SAGO 20-04 contains, as Standard Conditions of Probation and Supervised Release, the following condition: "(4) The defendant must not knowingly leave the judicial district without first receiving the permission

of the court or probation officer."

Mr. Sibella resides in both the District of Nevada and Southern District of California. As such, the defense requests that this condition be modified to permit Mr. Sibella to travel between those districts without the necessity of obtaining permission, but rather by giving notice to the probation officer.

### 3. Standard Employment Condition

SAGO 20-04's Standard Conditions of Probation and Supervised Release also contain the following condition: "(8) The defendant must work at lawful occupation unless excused by the probation officer for schooling, training, or other acceptance reasons …." Given Mr. Sibella's age and current employment status, the defense requests that this condition be removed.

## III. PERSONAL BACKGROUND

### A. Personal History and Characteristics

The PSR contains an overview of Mr. Sibella's personal history and characteristics. *See* PSR ¶¶ 64-104. And, the many letters of support give depth and detail to Mr. Sibella's personal history and characteristics.

Mr. Sibella's personal history reflects generations of hard-working, self-made, successful people – including his grandparents and parents. He inherited both their work ethic and commitment to those around them. Starting out as a busboy, construction worker, and eventually front desk clerk at a casino hotel, Mr. Sibella rose to being a recognized and respected figure in the Las Vegas hospitality business. The many letters of support from Mr. Sibella's professional colleagues over the last four decades underscore this.

Mr. Sibella's reputation of helping others along the way appears to be his hallmark. As the Court will read, many letters of support reflect examples of him significantly helping others in very generous and meaningful ways. They also reflect examples of him giving to his community and local institutions, such as his alma mater, that supported and gave him opportunities. Prior to the incident at issue

in this case, Mr. Sibella enjoyed a positive reputation in the casino hotel industry and the larger Las Vegas community and his concern and service to others landed him awards for his outstanding service and commitment.

Finally, Mr. Sibella has a supportive family and a large and strong network of friends – as demonstrated by their many letters of support – who attest to his commitment to them, as well as to his good character, generosity, and loyalty.

### B.  Employment History

The PSR contains an overview of Mr. Sibella's employment history.  *See* PSR ¶¶ 84-93.  The defense will add some detail so that the Court can understand the trajectory of Mr. Sibella's career.

In 1986, Mr. Sibella began his career by working the graveyard shift as a front desk clerk at The Golden Nugget Hotel and Casino while attending UNLV. By the time he graduated from college, Mr. Sibella had been promoted to Assistant Hotel Manager.  In 1989, he had planned to transfer to a new hotel, The Mirage. However, after working with the new president at The Golden Nugget, Dennis Gomes, he was asked to stay and was promoted to Hotel Manager.

Two years later in 1991, Mr. Gomes accepted a new position in Atlantic City at the Taj Mahal, and he asked Mr. Sibella to join him in a new position in Atlantic City.  Mr. Sibella accepted the position at Taj Mahal as Vice President of Hotel Operations.  Soon after, he was promoted to the casino side of the business as Vice President of Casino Administration.

In 1996, Mr. Gomes accepted a position at the Tropicana Hotel in Atlantic City and offered Mr. Sibella a position there as Vice President of Casino Marketing. In 1997, Mr. Sibella transferred to the Tropicana Hotel in Las Vegas and was employed in the same position.

In 1998, Mr. Sibella accepted the position of Vice President of Casino Marketing at Treasure Island Hotel and Casino.  In 2000, he was promoted to President and Chief Operating Officer where he remained until 2005.

In 2005, Mr. Sibella was promoted to President and Chief Operating Officer at Mirage Hotel and Casino where he remained until 2010.

In 2010, Mr. Sibella became President and Chief Operating Officer at MGM Grand Hotel and Casino where he remained until 2019. In this role, he was responsible for overseeing the strategic direction of all resort operations at the 5,044-room MGM Grand, including The Signature, SKYLOFTS and The Mansion at MGM Grand, in addition to the 16,800-seat Grand Garden Arena and numerous restaurants led by celebrity chefs.

In 2019, Mr. Sibella left MGM Grand. Shortly thereafter, he accepted a position as President and Chief Operating Officer at Resorts World. Resorts World was the first new hotel being built on the Las Vegas strip in 11 years. Mr. Sibella was tasked with managing the design/construction of the new property. Mr. Sibella was also tasked with hiring new staff and the massive preparation to open its doors in 2021, amidst the pandemic. The opening was a big success, and today the hotel occupancy, restaurants, and retail businesses are thriving. The hotel features 3,506 guest rooms and suites; an innovative, next-generation gaming floor; over 40 world-class food and beverage options; a 5,000-capacity theatre; distinct nightlife venues; and an extensive retail collection boasting a wide spectrum of designer and boutique brands. The new hotel provided over 6,000 jobs to the local community. Over 130,000 people applied to work at the property.

In September 2023, Mr. Sibella was terminated by Resorts World when it learned of the investigation of Mr. Sibella regarding conduct at his prior employer, MGM Grand. Mr. Sibella is currently unemployed.

In 30 years of work in the gaming industry, in Las Vegas and Atlantic City, Mr. Sibella has never been disciplined by the Nevada Gaming Control Board or New Jersey Casino Control Commission. No fines, suspensions, or timeouts.

### C. Mr. Sibella's Good Deeds and Service to Others

The PSR provides examples of Mr. Sibella's good deeds and service to others. *See* PSR ¶¶ 73 and 74(c). The defense will add more detail here, as well as through the letters of support, so that the Court can understand the full extent of Mr. Sibella's contributions.

As the letters of support demonstrate, Mr. Sibella has been extremely active in giving back to his hometown community, as well as to causes beyond Las Vegas.

Mr. Sibella's involvement has included feeding the homeless with Catholic Charities, cleaning cages at the animal shelter, building homes for veterans, spending time at Opportunity Village with the students and volunteering his time to their Christmas Village. He worked with the Las Vegas Metropolitan Police Department to build the first substation on the Las Vegas Strip and participated in its police recruiting program.

Since 2011, Mr. Sibella has donated significant time to Opportunity Village, a Las Vegas non-profit program that has been dedicated to helping people with disabilities. The program successfully empowers people with disabilities by employing them and positively impacting their lives. Mr. Sibella also served on the board for several years.

Throughout Mr. Sibella's career, he volunteered countless hours for charity and local organizations such as the animal shelter, the Animal Foundation, Opportunity Village (just mentioned), Make A Wish Foundation (where he served on the Advisory Board from 2012-2023), The Cancer Institute, Lou Ruvo Center for Brain Health, The Shade Tree, and others.

From 2008 to 2015, Mr. Sibella and his wife hosted dog and cat adoption events at the hotels where he was employed. The program was called, "Charlie's Angels." Dogs and cats that needed adoption were brought to the hotel event and Mr. Sibella and his wife paid all of the adoption fees for the employees. The

program was named after their dog, Charlie, whom they adopted at an event and who had made a big impact on their lives and the lives of their children.

For the past 20 years, Mr. Sibella has also helped raise funds for many charities, including Boys and Girls Clubs of America. According to a letter from Jim Click, Jr.:

> One of my favorite charities is the Boys and Girls Clubs of America. Charities can't survive without an army of donors and volunteers. Scott has always been in my army, for at least 20 years, he has helped our local chapters raise probably over a quarter million dollars through his generous contributions and donations of auction items.

Letter of Jim Click, Jr. at C-1.

Mr. Sibella was involved for several years in Coaches for Cancer, a partnership between the American Cancer Society and the National Association of Basketball Coaches. According to Lon Kruger, Chair of the National Council of Coaches vs. Cancer:

> In 2012, the organization needed a host property to take ownership of the event, and ultimately the cause. Scott took personal ownership of the event and the fight against cancer and the MGM Grand supported the event. With Scott's direction to hold down costs as much as possible (donating rooms, gathering participants, etc.) we grew the Las Vegas Golf Classic into the largest American Cancer Society sponsored golf event in the nation. We went from grossing over $200,000 annually to netting over $1 million a year, all of which went to fight cancer. Scott was so dedicated to the event/effort that he worked to protect it even as he moved to Resorts World. Because of that the now nearly $2 million annual event still exists. Without Scott, we would not have enjoyed this level of success. It's safe to say that over the last decade-plus, Scott's commitment to support the event has helped us raise over $15 million to fight cancer.

Letter of Lon Kruger at C-10.

Kendall Brill & Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

604405203                              9                         Case No. CR 23-656-DMG
DEFENDANT SCOTT SIBELLA'S SENTENCING MEMORANDUM

Mr. Sibella was the recipient of the Griffin Award, in December 2021, for his work with the Las Vegas Business Academy. He participated in a mentorship program for graduate students, and he volunteered his time mentoring the students, also donating funds to the program. And he served for many years on the Board for Las Vegas Events (including three years as its chair).

From 2022-23, Mr. Sibella was involved in a non-profit program, Hope for Prisoners. In that role, he helped create training programs for felons to get hired at casino hotels when they are released. Previously, felons were prohibited from employment at casinos. Mr. Sibella was on the prisoner working committee to help raise money and develop programs in the prison system to start training prisoners in different fields to be able to obtain employment upon release.

Finally, Mr. Sibella has supported his alma mater, UNLV. He has contributed his time in multiple ways through fundraising, mentoring students, class lectures, hosting athletic ceremonies, recruiting, and creating a successful internship program. His contributions in this regard are detailed in the letter to the Court from Stowe Shoemaker, PhD, former Dean of William H. Harrah College of Hospitality. Mr. Sibella received the Alumnus of the Year award from UNLV in 2007.

## IV. LEGAL STANDARDS

A court should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a); *see Kimbrough v. United States*, 552 U.S. 85, 91 (2007) (describing this language as the statute's "overarching provision").

As stated above, the defense submits that a sentence of one year of probation, with a fine of $9,500 and the $100 Special Assessment, is sufficient, but not greater than necessary, to achieve the purposes of sentencing.

## V. SENTENCING FACTORS

### A. Nature and Circumstances of the Offense

In determining an appropriate sentence, the Court must consider the nature

and circumstances of Mr. Sibella's offense.  *See* 18 U.S.C. § 3553(a)(1).

Mr. Sibella fully accepts responsibility for his conduct, which is set forth in both the Statement of Facts attached to his Plea Agreement, as well as in the PSR. *See* PSR ¶¶ 20-38.

### B.  History and Characteristics of Mr. Sibella

In determining an appropriate sentence, the Court also must consider Mr. Sibella's history and characteristics.  *See* 18 U.S.C. § 3553(a)(1).  His history and characteristics are set forth in the PSR and letters of support, as well as above.  A few points bear highlighting.

#### 1.  Mr. Sibella's Conduct is a Marked Deviation from an Otherwise Law-Abiding Life

Mr. Sibella is 61 years old.  Until last September, as noted above, he had worked in the gaming and hospitality for over 40 years with an unblemished record. He comes from a strong and supportive family and has a long track record of stable and successful employment, as well as deep and genuine involvement in his community.  The letters of support underscore that Mr. Sibella's conduct here was completely out of character.

#### 2.  Mr. Sibella's Employment Record

Mr. Sibella's long, consistent, and distinguished employment record over more than 40 years – which the defense describes above, and as discussed in the PSR and in many of the letters of support – buttresses a probationary sentence.

#### 3.  Mr. Sibella's Acceptance of Responsibility

Mr. Sibella's early acceptance of responsibility, demonstrated by his entering into a pre-indictment disposition, merits consideration in support of a probationary sentence.  Mr. Sibella's early acceptance of responsibility is greater than that of a typical defendant in a federal criminal case, who is able to earn a 2- or 3-level reduction under U.S.S.G. § 3E1.1, simply by timely admitting conduct and sparing the government from preparing for trial. *See, e.g.*, *United States v. Brown*, 985 F.2d

478, 482-83 (9th Cir. 1993) (holding district court did not err in making additional reduction beyond that provided by § 3E1.1).

### 4. The Collateral Consequences to Mr. Sibella and his Family

Mr. Sibella has suffered a number of collateral consequences that merit consideration in support of a probationary sentence.[6] These include, but are not limited to, the loss of his employment at Resorts World and the possibility that he will be required to surrender his gaming license in Nevada and potentially pay an additional fine on top of any imposed here. Mr. Sibella will very likely be unable to work in the gaming industry for the foreseeable future (despite his desire to return to the industry in a consulting capacity).

In addition, Mr. Sibella's case has unsurprisingly garnered significant media attention in Las Vegas and the gaming community more generally, even before Mr. Sibella's resolution was made public. While his friends and family have rallied around him, as evidenced by his many letters of support, Mr. Sibella has nevertheless suffered a tremendous blow to his reputation, which was excellent and unblemished before the conduct underlying this matter. He has also endured great personal shame for conduct that provided no benefit to him, financially or otherwise.

### 5. History of Good Works and Community Service

As confirmed by the information above, as well as from the PSR and the many of the support letters that the defense has provided to the Court, Mr. Sibella has a long history of good works and service to his community. This not only reinforces that Mr. Sibella's conduct in this matter was an aberration, it further supports the imposition of a probationary sentence.

---

[6] Collateral consequences are an appropriate consideration for a court, when evaluating a sentence under § 3553(a). *See, e.g., United States v. Nesbeth*, 188 F.Supp.3d 179 (E.D.N.Y. 2016).

### C. A Probationary Sentence of No More Than One Year is Just Punishment and Meets the Purposes of Sentencing

A probationary sentence of no more than one year, along with the fine of $9,500 and the Special Assessment, will reflect the seriousness of the offense, promote respect for the law, and provide just punishment.

Given Mr. Sibella's offense conduct, the applicable Guidelines, his acceptance of responsibility, personal history and characteristics, low risk of recidivism, significant collateral consequences, and otherwise law-abiding life, a probationary sentence of no more than one year is appropriate. This reflects the seriousness of his offense, while also promoting respect for the law and providing just punishment.

In addition, nothing suggests Mr. Sibella is a danger or will commit future crimes. It is undisputed that specific deterrence is not an issue here. And, given the impact of a felony conviction, the loss of his employment, and the potential impact on his gaming license, a sentence of probation with a fine, will provide general deterrence and is sufficiently punitive.

### VI. CONCLUSION

For the foregoing reasons and consistent with the recommendation of the USPO, the defense respectfully requests that the Court sentence Mr. Sibella to no more than a year of probation, a fine of $9,500, and a Special Assessment of $100.

DATED: April 24, 2024            KENDALL BRILL & KELLY LLP

By:  /s/
Jeffrey H. Rutherford
Attorneys for Defendant Scott Sibella